# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>NEOVI, INC., d/b/a NEOVI DATA CORPORATION and QCHEX.COM, et al.,,<br><br>　　　　　　　　　　Defendants. | CASE NO. 06-CV-1952-JLS (JMA)<br><br>**ORDER: (1) DENYING DEFENDANTS' RECONSIDERATION MOTION; (2) DENYING PLAINTIFF'S MOTION TO STRIKE; AND (3) GRANTING PLAINTIFF'S PROPOSED INJUNCTIVE RELIEF**<br><br>(Doc. Nos. 107 & 116.) |

Presently before the Court are Defendants' motion for reconsideration, (Doc. No. 107) Plaintiff's opposition, (Doc. No. 111) and Defendants' reply. (Doc. No. 113.) Also before this Court are Plaintiff's and Defendants' supplemental briefs regarding the proper remedy in this case. (Doc. Nos. 106, 108, 109 & 114.) Finally, Plaintiff has also presented this Court with a motion to strike. (Doc. No. 116.) For the reasons stated below, this Court **DENIES** Defendants' motion for reconsideration, **GRANTS** Plaintiffs' proposed injunctive relief, and **DENIES** as moot Plaintiff's motion to strike.[1]

//

---

[1] Although Plaintiff captioned the document filed as a "Memorandum of Points and Authorities in Support of Plaintiff's Request to Strike or Give No Weight to Defendants' Written Material, Consisting of Power Point Slides," the Court construes it as a motion to strike. Because Plaintiff's motion is moot, the underlying substance of that motion is not discussed here.

# BACKGROUND

The Court incorporates by reference the facts as described in its order granting in part Plaintiff's motion for summary judgment and denying Defendants' motion for summary judgment. (MSJ Order, at 2–8.)

# PROCEDURAL HISTORY

On September 19, 2006, Plaintiff filed the instant action against Defendants. (Doc. No. 1.) On January 18, 2007, Judge William Q. Hayes denied Plaintiff's motion for a preliminary injunction.[2] (Doc. No. 32.) On January 11, 2008, this Court granted Plaintiff's 56(f) motion and denied Defendants' motion for summary judgment without prejudice. (Doc. No. 71.) In March 2008, both Plaintiff and Defendants filed motions for summary judgment. (Doc. Nos. 82 & 89.) The Court issued an order granting Plaintiff's motion for summary judgment and denying Defendants' motion for summary judgment, but asked the parties to file supplemental briefing in regards to the Court's authority to impose Plaintiff's proposed remedies. (Doc. No. 105.) Both parties filed their supplemental briefs and Plaintiff filed a supplemental reply. (Doc. Nos. 106, 107, 109, & 114.) Defendants also filed a motion asking the Court to reconsider its order, Plaintiff filed an opposition, and Defendant filed a reply. (Doc. Nos. 108, 111, & 113.)

# ANALYSIS

## I.    Defendant's Motion for Reconsideration

Defendants moved this Court to reconsider its prior order granting in part Plaintiff's summary judgment motion. Defendants raise six issues[3] on which they claim this Court erred in its prior order.[4] As explained below, the Court is unpersuaded by any of these arguments and therefore denies Defendants' motion.

---

[2] On October 2, 2007, this case was reassigned to the Honorable Janis L. Sammartino pursuant to Judge Hayes' transfer order. (Doc. No. 59.)

[3] Defendants also make the meritless argument that the Court's tentative opinion prejudiced them at oral argument. (Memo. ISO Reconsideration Motion, at 2–3.) Defendants knew the Court's opinion was only tentative, briefed the Court on all relevant issues, and acknowledge that this Court had the right to change its mind. (See Memo. ISO Reconsideration Motion, at 1–2.) The Court will not reconsider its order because Defendants made a tactical choice they now regret.

[4] Defendants also requested permission file an interlocutory appeal with the Ninth Circuit. (Memo. ISO Motion, at 10.) Because an interlocutory appeal would not materially advance the termination of this litigation, Defendants' request is **DENIED**.

### A. Legal Standard

Under Federal Rule of Civil Procedure 54, "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. Proc. 54(b). In the Southern District of California, motions for reconsideration are also governed by Local Rule 7.1(i). Under Local Rule 7.1(i)(1), a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." S.D. Cal. CivLR 7.1(i). The moving party must provide the Court with an affidavit setting forth, *inter alia*, "what new or different facts and circumstances are claimed to exist which did not exist, or were not shown." Id.

Generally, courts will reconsider a decision if a party can show (1) new facts, (2) new law, or (3) clear error in the Court's prior decision. See, e.g., School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); Hydranautics v. FilmTec Corp., 306 F.Supp. 2d 958, 968 (S.D.Cal. 2003). Ultimately, the decision on a motion for reconsideration lies in the Court's sound discretion. Navajo Nation v. Norris, 331 F.3d 1041, 1046 (9th Cir.2003) (citing Kona Enter., Inc. v. Estate of Bishop, 229 F.3d 877, 883 (9th Cir.2000)).

### B. Defendants' Failure to Comply With Local Rule 7.1(i)(1)

Before the Court addresses any substantive questions, it must address the legal deficiencies in Defendants' motion. First, the motion does not comply with Local Rule 7.1(i)(1). Defendants did not submit an affidavit or certified statement with their motion. They also have not offered the Court new facts or circumstances that were not presented in their prior summary judgment papers. Instead, Defendants claim that they need not follow Local Rule 7.1(i)(1) because their motion is "based on judicial error." (Reconsideration Reply, at 2.) Defendants, however, do not explain why this excuses them from complying with the Local Rule.

Second, Defendants' motion simply restates the same arguments and citations previously presented to and rejected by this Court. "A motion for reconsideration is not an opportunity to renew arguments considered and rejected by the court, nor is it an opportunity for a party to re-argue a motion because it is dissatisfied with the original outcome." Devinsky v. Kingsford, 2008 WL 2704338, at *2 (S.D.N.Y. 2008). A court need not consider a motion for reconsideration relying on

arguments previously made and ruled on. See, e.g., Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004); Strato v. Ashcroft, 388 F.3d 651, 655 (8th Cir. 2004); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003); Sithon Maritime Co. v. Holiday Mansion, 177 F.R.D. 504, 505 (D.Kan.1998).

It would be proper for this Court to summarily reject Defendants' motion without further comment. However, Defendants appear to fundamentally misapprehend the basis for and reasoning behind this Court's prior order. Therefore, the Court will exercise its discretion and address the substance of Defendants' motion.

### C. Identification of an unfair business practice

Defendants begin by arguing that the Court's order did not "define just what Defendants' 'unfair practice' actually consisted of." (Memo. ISO Reconsideration Motion, at 3.) Defendants suspect that their unfair practice consisted of "Defendants' creation and implementation of the Qchex system and their failure to maintain reasonable verification measures." (Id.) However, according to Defendants,"[t]his . . . is not what the FTC pled." (Id.) Rather, the FTC's complaint is allegedly based on "Defendants 'creat[ion] and deliver[y]' [of] unauthorized checks." (Id.) Defendants claim that under the FTC's alleged theory, the Court could not possibly find an unfair practice because Qchex did not create or deliver checks,[5] but merely provided "a template and delivery options." (Id., at 4–5.) The Court finds this argument unpersuasive. This Court explained the standard for finding an unfair practice in its prior order. "A practice is unfair under the FTC Act if: (1) it causes or is likely to cause substantial injury to consumers, (2) the injury is not reasonably avoidable by consumers themselves, and (3) the injury is not outweighed by countervailing benefits to consumers or to competition." (MSJ Order, at 10 (citing 15 U.S.C. § 45(n)).) Plaintiff proved each of these three prongs and therefore the Court found that Defendants had engaged in an unfair practice. (See MSJ Order, at 10–15.) Defendants' argument here does not demonstrate clear error because it does not address the FTC Act test or any of its elements. Instead it simply restates two arguments that this Court has already rejected.

First, the Court explained that Defendants engaged in an unfair practice by "creat[ing] and

---

[5] Defendants' argument is based on the claim that a check is a draft, and thus is technically "created" by the person issuing that draft. (Id., at 3–4; Def. Memo. ISO MSJ, at 11–12.)

1 deliver[ing] checks without a reasonable level of verification" (Id., at 13.) The order mentioned this
2 repeatedly and, in spite of claiming ignorance, Defendants identified that finding. (See id., at 13–15.)
3 This finding is consistent with the FTC's allegations that "Defendants . . . injured individuals and
4 businesses by creating and delivering checks without first verifying that the customers . . . had
5 authority to draw such checks on the [specified] bank accounts." (Compl. ¶ 27.)

6 Moreover, Defendants "created" these checks. The complaint does not use "create" in a
7 technical sense,[6] but rather in the practical sense of bringing the fraudulent checks into being.
8 Defendants printed, or provided the means to print, the fraudulent checks which led to this action, that
9 is, they brought those fraudulent checks into existence. (MSJ Order, at 3–5.) Moreover, in printing
10 these checks, Defendants made them appear legitimate and credible. (Id.) These actions constitute
11 "creation" for purposes of the FTC's complaint.

12 For the reasons explained above, the Court rejects Defendants' argument. Defendants have
13 not shown that this Court committed clear error in its prior order. Thus, reconsideration is not merited
14 on this question.

15 **D.     Attempts to distinguish relevant case law**

16 Defendants next take issue with the case law cited by this Court. (Memo. ISO Reconsideration
17 Motion, at 5–7.) First, Defendants argue that the Court should not have relied on FTC v. Accusearch,
18 2007 WL 4356786 (D. Wyo. Sept. 28, 207), and FTC v. Windward Marketing, 1997 WL 33642380
19 (N.D. Ga. Sept. 30, 1997) because both cases are factually distinguishable. (See Memo. ISO
20 Reconsideration Motion, at 5–6; MSJ Order, at 11–13.) Second, Defendants claim that this Court
21 "was wrong" to find California state cases interpreting California state law unpersuasive. (Memo. ISO
22 Reconsideration Motion, at 6.)

23 The Court disagrees with Defendants on both issues. First, Accusearch and Windward
24 Marketing are plainly applicable for the purposes for which the summary judgment order used them.
25 Defendants have consistently claimed that *they* did not engage in fraud, but rather that Qchex's users
26 abused the system. (See, e.g., Reconsideration Reply, at 2.) Accusearch demonstrates that this

---

[6] Although the Uniform Commercial Code ("UCC") defines check creation in an insular manner, the Court is unpersuaded that the UCC's definition should control the outcome here. That definition would defeat purpose of FTC Act—eliminating unfair or deceptive business practices. See Cal. Dental Ass'n v. FTC, 526 U.S. 756, 768 (1999).

1 argument misses the point. (See MSJ Order, at 11 (quoting Accusearch, 2007 WL 4356786, at *6).)
2 Defendants created and sent checks without verifying users' authority to do so. Like the defendant
3 in Accusearch, *all* of Qchex's business involved this unfair practice and thus caused the harm to
4 consumers.

5 Similarly, the Court relied on Windward Marketing because both involved defendants whose
6 "business practice significantly facilitated fraudulent activity." (MSJ Order, at 13.) In both cases, the
7 unfair practices *caused* the harm by "facilitat[ing] and provid[ing] substantial assistance" to the
8 fraudsters. (MSJ Order, at 12 (citing Windward Marketing, 1997 WL 33642380, at *12).) Moreover,
9 Defendants "knew of the high level of fraud, and, like Defendant Wholesale, who knew of
10 unauthorized deposits, they chose to continue to operate without sufficient verification measures."
11 (Id., at 13.) Thus, both Accusearch and Windward Marketing are relevant, persuasive precedent
12 supporting this Court's conclusion that Defendants caused the consumers' injuries.

13 Next, Defendants have not shown that this Court should be persuaded by California state cases
14 interpreting California state law. These cases, as recognized in the Court's prior order, (1) are not
15 from federal courts, (2) discuss a state statute rather than the FTC Act, and (3) do not use the same test
16 set forth under the FTC Act. (See MSJ Order, at 13 n.3.) Defendants do not argue that any of these
17 are untrue, instead listing five different considerations which they claim should persuade this Court.
18 (See Reconsideration Reply, at 6–7.) This does not address the Court's concerns about the utility of
19 the state cases, nor does it persuade this Court to credit state cases above federal cases.

20 These arguments about which cases should control the outcome here are not new, and the
21 Court is still not convinced by them. Defendants have not shown error, much less clear error. Thus,
22 these arguments do not justify reconsideration of the Court's prior order.

23 **E.   Defendants' Claims About Triable Issues of Fact**

24 Defendants' third argument contends that triable issues of fact remain on whether Defendants
25 violated the FTC Act. (Memo. ISO Reconsideration Motion, at 7–9.) A motion for summary
26 judgment is only appropriate only in "the absence of a genuine issue of material fact." (MSJ Order,
27 at 9 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).) Thus, if triable issues of fact remain,
28 granting summary judgment would be clear error. Defendants' arguments, however, tread ground
already covered, and the Court still finds no genuine issues of material fact.

**1.     Whether consumers could reasonably avoid injury**

The first issue on which Defendants argue that triable issue of fact remain is whether consumers could have reasonably mitigated the damage *after* it occurred. (Memo. ISO Reconsideration Motion, at 7.) Both post-injury mitigation and pre-injury avoidance factor into the FTC Act's avoidance prong. See Orkin Exterminating Co., Inc. v. FTC, 849 F.2d 1354, 1365 (11th Cir. 1988); 15 U.S.C. § 45(n). Defendants claim that the evidence shows that consumers could avoid injury by having the bank catch fraudulent checks before they cleared and by notifying the bank and receiving reimbursement after unauthorized charges. (Memo. ISO Reconsideration Motion, at 7.)

The Court is unconvinced that any genuine issue of material fact remains. The summary judgment order considered both pre- and post-injury avoidance. (See MSJ Order, at 14.) "Many consumers had no opportunity or ability to avoid" being harmed by Defendants' fraudulent checks and "Defendants provided minimal information to injured consumers . . . and thereby made it more difficult for them to investigate and stop fraudulent activity on their bank account." (MSJ Order, at 14.) It is likely that some consumers never noticed the unauthorized withdrawals. Even if the consumer did notice, obtaining reimbursement required a substantial investment of time, trouble, aggravation, and money. Further, Defendants' uncooperativeness only increased this outlay. Neither could consumers mitigate the period of time during which they lost access to and use of the funds taken using Defendants' fraudulent checks. Regardless of whether a bank eventually restored consumers' money, the consumer suffered unavoidable injuries that could not be fully mitigated.[7] Defendants have not shown any genuine issue of material fact regarding reasonable avoidance to preclude summary judgment.

**2.     Whether consumers suffered substantial injury**

Defendants next claim the evidence is insufficient to support the Court's finding consumers suffered substantial injury. (Memo. ISO Reconsideration Motion, at 8–9.) According to Defendants, "'frozen for fraud' was merely a label given to frozen accounts," which does not establish that fraud occurred. (Id., at 8.) Defendants also challenge the significance of Plaintiff's consumer testimony,

---

[7] Defendants' argument that banks could have prevented consumer injury is a red-herring. The relevant issue is whether the injury "is . . . reasonably avoidable by consumers themselves," not whether the banks had an independent duty to protect consumers. 15 U.S.C. § 45(n).

1 claiming that these people never would have suffered an injury had "their bank . . . been doing the job they were charged with." (Id., at 9.) Defendants argue that triable questions of fact remain on each of these issues. (Id., at 8.)

Defendants' arguments are specious at best. Contrary to what Defendants claim, the evidence shows that Qchex's policies required substantial proof of fraud, such as an affidavit and a copy of the fraudulent check, prior to freezing an account. (See, e.g., Plaintiff's Summary Judgment Motion, Exs. 86, 87, & 557, at 2, 4–5.) Thus, in labeling an account as "frozen for fraud," Defendants *required evidence* proving the fraud which they now claim did not occur. Plaintiff's consumer testimony validates this evidence with actual examples of consumers whose bank accounts were fraudulently accessed and who suffered substantial injury. (See MSJ Order, at 13–14.) The evidence demonstrating that consumers suffered substantial injury is overwhelming, and Defendants have offered no evidence contradicting this finding.[8] No genuine issue of material fact remains here because no reasonable jury could find for Defendants.

### 3.     Whether the system's benefits outweighed consumer injury

Finally, Defendants claim that triable issues of fact exists as to whether the benefits of Qchex outweigh injury to consumers. (Memo. ISO Reconsideration Motion, at 9.) First, according to Defendants, the Court was wrong to find that "Defendants did not provide any legitimate evidence" showing a triable question of fact. (MSJ Order, at 15.) Defendants point to exhibits included in the summary judgment motions (consisting solely of declarations by Defendant James M. Danforth) which describe the system's benefits. (See Memo. ISO Reconsideration Motion, at 9; Memo. ISO Pl. Motion for Summary Judgment ("FTC MSJ"), Ex. 519; FTC MSJ Ex. 520.)

Second, Defendants argue that Plaintiff's expert witness, Dr. Mann, created triable issues of fact. (Reconsideration Reply, at 3.) Dr. Mann testified that calculating the exact number of fraudulent checks is not possible. (Id.) Defendants claim that this makes it impossible to weigh the system's

---

[8] The Court rejects Defendants' assertion that it needs to "definitively quantify the number of fraudulent items" in order to find substantial consumer injury. (Memo. ISO Reconsideration Motion, at 8.) Given that "Qchex sent nearly 155,000 checks", drawn on 37,369 discrete bank accounts, "from 13,770 Qchex accounts that later were frozen for fraud," the amount of fraud is clearly massive. (MSJ Order, at 8.) When the secondary injuries of check fraud, like the time and energy to have the money restored, are included, there is no question substantial injury occurred even if it cannot be reduced to an exact number or dollar value.

benefits against consumer injury. (Id.) Dr. Mann also "refuted each of Defendants' purported benefits of the Qchex system." (Reconsideration Opp., at 7 n.13.) Defendants reason that because Dr. Mann disputes Defendants' claims about the benefits of the Qchex system, that there are genuine issues of material fact.[9]

The Court finds that no triable issue of fact remain here. First, "Defendants did not provide any legitimate evidence" regarding the balancing of benefits against consumer injury. (MSJ Order, at 15.) Plaintiff's expert witness testimony "established that Defendants' business model did not provide any advantage over other payment options and that any benefits were small." (Id.) Defendants rely solely the Declaration of Defendant James Danforth to counter Plaintiff's evidence. (Memo. ISO Reconsideration Motion, at 9.) The Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Isand Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). The Danforth Declaration is the epitome of "uncorroborated and self-serving testimony," and this Court is unwilling to rely on it alone in order to find a genuine issue.

Defendants' second argument also cannot be correct. First, according to Dr. Mann, "the evidence establishes that fraudulent users were not rare or uncommon, but instead were among the most common users of QChex." (Mann Decl. ¶ 34.) This testimony, along with the other facts establishing substantial fraud, demonstrates substantial injury,[10] regardless of whether that injury is susceptible to precise quantification. (See supra, at 7–8.) Next, Defendants again rely on the Danforth and Villwock declarations to establish Qchex's benefits. (Reconsideration Reply, at 3–4.) As previously stated, the Court finds this testimony "uncorroborated and self-serving" and will not rely on it to find a genuine issue of material fact. See Villiarimo, 281 F.3d at 1061. Thus, the facts demonstrate a massive consumer injury and Defendants present no persuasive evidence of Qchex's

---

[9] Defendants also argue that "we cannot tell from [Dr. Mann's] Declaration the extent of his review of the materials he claims to have consulted." (Reconsideration Reply, at 2–3.) They ask a series of rhetorical questions designed to imply that Dr. Mann is a liar, an FTC stooge, or both. (Id.) Defendants present no evidence supporting this implication. Defendants had the opportunity to depose Dr. Mann in person, by phone, or by written question, but declined to do so. The Court will not reward Defendants' lazy discovery practices or baseless accusations by entertaining this argument.

[10] A substantial injury under the FTC act requires only that "consumers were injured by a practice for which they did not bargain." FTC v. J.K. Pub'ns., Inc., 99 F.Supp. 2d 1176, 1201 (C.D.Cal. 2000).

benefits. In light of this, there is no genuine issue of material fact as to whether the systems' benefits outweigh consumer injury.

In sum, none of the issues which Defendants raise present a genuine dispute of material fact which would preclude granting Plaintiff's motion for summary judgment. Defendants arguments simply rehash the contents of their previous briefing, supported by "uncorroborated and self-serving" declarations. The Court remains convinced that there is no genuine dispute as to the material facts supporting summary judgment for Plaintiff.

**F.     FTC's authority to proceed by litigation rather than rule-making**

Departing from the substance of Court's order, Defendants attack the FTC's authority to litigate this case. (See Memo. ISO Reconsideration Motion, at 9–10.) Pointing to Ford Motor Co. v. FTC, 673 F.2d 1008 (9th Cir. 1981), Defendants claim that "the FTC must proceed by rule-making rather than adjudication if it seeks to change the law and establish rules of widespread application." (Memo. ISO Reconsideration Motion, at 10.) Because the requested injunction would allegedly have widespread application, Defendants argue that the Court should require the FTC to engage in rulemaking. (Id.) Moreover, according to Defendants, if the Court allows the FTC to proceed here, "manufacturers of paper checks," "makers of software, computer hardware, printers, and providers of internet access," could all be subject to regulation based on this Court's action. (Id.)

The Court disagrees. In Ford Motor, the FTC was trying to stop a widespread credit practice common among car dealerships. Ford Motor, 673 F.2d, at 1008. The agency began administrative proceedings against a wide range of automotive defendants. Id., at 1009. The Ninth Circuit held that because the "adjudication change[d] existing law, and ha[d] widespread application," the FTC "exceeded its authority by proceeding to create new law by adjudication rather than by rulemaking." Id., at 1010. Subsequent cases have clarified that an agency may announce new principals during adjudication so long "its action [does not] 1) constitute an abuse of discretion or 2) circumvent the [Administrative Procedure Act's] requirements." Union Flights, Inc. v. FAA, 957 F.2d 685, 688 (9th Cir. 1992).

The FTC may proceed by adjudication here. First, this litigation will not result in any "changes [to] existing law." It merely applies the established principles of the FTC Act to Defendants' particular unfair business practices. Defendants claim that finding liability here would

1  change the rules set forth in the UCC and the Communications Decency act of 1996 ("CDA"). (Memo. ISO Reconsideration Motion, at 10.) The Court disagrees. Neither the UCC nor or the CDA permits Defendants to create and deliver checks without reasonable verification measures.

Moreover, unlike Ford Motors, this action is against a single set of Defendants and involves one discrete fraudulent practice. Defendants' slippery slope hyperbole overstates the applicability of this Court's decision. The Court's summary judgment order does not have "widespread application."

Further, Plaintiff has not abused its discretion nor attempted to circumvent the APA. The FTC is not using this "adjudication to amend a recently amended rule, or to bypass a pending rulemaking proceeding." Union Flights, 957 F.2d at 688. Similarly, Defendants cannot claim that they relied on a former FTC policy, or any other recognized situation constituting an abuse of discretion. See id. Without these showings, Defendants have not demonstrated an abuse of discretion or attempt to circumvent the APA.

The FTC, as an administrative agency, has substantial discretion in deciding whether to proceed via rulemaking or adjudication. See SEC v. Chenery Corp., 332 U.S. 194, 203 (1947). This Court will not limit Plaintiff's discretion to proceed by adjudication where Defendants have not shown that Ford Motors applies.

None of Defendants' arguments convince this Court that it was mistaken in its original order. Since Defendants offer this Court no grounds which justify reconsideration of the Court's prior order, Defendants' motion is denied.

## II. Plaintiff's Proposed Remedy

During the initial summary judgment briefing, Plaintiff offered this Court a proposal for injunctive relief following summary judgment. (See MSJ Order, at 17.) The Court rejected this proposal, and asked the parties to file supplemental briefs providing authority and responding to the proposed injunctive relief. (Id., at 18.) In light of these supplemental briefs and a revised version of Plaintiff's injunctive relief, the Court adopts Plaintiff's proposal in full.[11]

//

---

[11] Defendants claim that this Court must hold an evidentiary hearing before it decides on the proper remedy. (Defs. Supp. Br., at 1.) Because there are no genuine issues of material fact remaining in this case, an evidentiary hearing is not required. Fed. R. Civ. Proc. 56(c).

### A. Plaintiff's Proposed Remedy

The Court is authorized to issue a permanent injunction for a violation of the FTC Act by §13(b) of the Act. 15 U.S.C. § 53(b); see also FTC v. H.N. Singer, Inc., 668 F.2d 1107, 1113 (9th Cir. 1982). Because Qchex has ceased operation, in order to obtain an injunction the FTC must prove that "there exists some cognizable danger of recurrent violation." United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953). Two factors guide the Court's analysis in this determination: (1) "the deliberateness and seriousness of the present violation," and (2) "the violator's past record." Sears, Roebuck & Co. v. FTC, 676 F.2d 385, 392 (9th Cir.1982).

In its original motion for summary judgment, "Plaintiff [sought] an order from this Court that in part: (1) direct[ed] Defendants to disgorge $535,358 in profits; (2) subject[ed] Defendants to monitoring and compliance requirements; (3) mandate[d] Defendants to 'take reasonable steps' to protect bank account information; and (4) prohibit[ed] Defendants from creating and delivering checks without 'reasonable verification procedures.'" (MSJ Order, at 17.) The Court's order granting Plaintiff's motion for summary judgment expressed two concerns about Plaintiff's proposed remedy. First, the Court perceived "that Plaintiff [was] virtually asking the Court to adopt the role of a regulatory agency and act outside its scope." (Id.) Second, it believed that "the proposed injunction does not appear to satisfy Rule 65(d)'s [specificity] requirements since it is unspecific and overly vague." (Id., at 18.) In light of these reservations, this Court declined to adopt the proposed remedy. (Id.)

Following the Court's order, Plaintiff revised the proposed injunctive relief in order to address the Court's concerns. (Pl. Supp. Br., at 1–2.) First, Plaintiff changed several definitions to "include[] successors and assigns." (Id., at 3.) The goal of this change is "to prevent Defendants from sidestepping the terms of [the] Order by closing the doors of one company only to reopen under a new corporate identity." (Id., at 4.) Second, Plaintiff revised Section I in an effort to bring it into compliance with Rule 65(d). (See id.) Specifically, the revised order details explicit steps Defendants must take to comply with the injunction. (Id.) Finally, the new proposed injunction removes certain language from Section III which Plaintiff believes is no longer necessary. (Id., at 8.)

Plaintiff's new proposal satisfies both the background legal requirements and the Court's concerns. First, the FTC has proven a cognizable danger of recurrent violation. As discussed at

1  length above and in this Court's prior order, Defendants' violation of the FTC Act was quite serious.
2  Sears, 676 F.2d at 392. In operating Qchex, Defendants facilitated check fraud by creating and
3  delivering checks without reasonable verification that a user has a right to the underlying funds. (See,
4  e.g., MSJ Order, at 15.) Moreover, even though Defendants claim that they did not intend to create
5  the fraudulent checks, the evidence clearly demonstrates that they were well aware of the fraud and
6  profited from the fraudulent use. (See id., at 7–8.) As other courts have found, "[p]ast unlawful
7  conduct is a critical element in determining the likelihood of future violations." FTC v. Kitco of
8  Nevada, Inc., 612 F. Supp. 1282, 1296 (D. Minn. 1985) (citing CFTC v. Hunt, 591 F.2d 1211, 1220
9  (7th Cir. 1979)). Defendants' pattern of conduct demonstrates a significant disregard for check fraud
10 and a significant likelihood of future violation. Further, following the bankruptcy of Qchex,
11 Defendants opened two more businesses offering the same basic functionality. (See MSJ Order, at
12 3.) Given the seriousness and deliberateness of Defendants' past record of violations, injunctive relief
13 is appropriate.
14       Plaintiff's proposal also complies with the dictates of Federal Rule of Civil Procedure 65(d).
15 This "Rule was designed to prevent confusion on the part of those faced with injunctive orders, and
16 to avoid the possible founding of a contempt citation on a decree to vague to be understood."
17 Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1087 (9th Cir. 2004). The injunction here
18 provides Defendants clear direction, such as explaining that they must employ a third party to verify
19 users' information. (See Pl. Supp. Br., at 5.) Furthermore, to the extent that the injunction allows
20 some flexibility in how the mandated tasks are accomplished, it is not beyond the bounds of Rule 65.
21 See Fortyune, 364 F.3d at 1087.
22       These changes address this Court's concerns. This injunction will not require this Court to
23 engage in oversight of Defendants' behavior and provides definite standards on which to evaluate
24 whether Defendants have violated the injunction's terms. Therefore, the Court finds that Plaintiff's
25 proposed injunction is both appropriate and legally authorized.
26    **B.   Disgorgement**
27       Plaintiff has also asked this Court to order Defendants to disgorge all revenue earned by Neovi.
28 (See FTC MSJ, at 43–44.) Based on Neovi's tax returns, the FTC alleges that these revenues total
   $535,358. (Pl. Supp. Br., at 8.) Plaintiff further requests that this Court hold all Defendants jointly

1 and severally liable for this total amount. (FTC MSJ, at 44.) In response, Defendants challenge the admissibility of Neovi's tax returns. According to Defendants, even if the tax returns are admissible, "Qchex revenues were greatly exceeded by the cost of developing, managing and maintaining the Qchex software and hardware systems." (Def. Supp. Br., at 3.) Because of this, Defendants ask this Court to deny disgorgement or reduce the total award by the cost of developing and maintaining the system.

The Court finds that Plaintiff has offered sufficient justification for the requested disgorgement and Defendants have not proffered evidence that justifies a reduction. The Ninth Circuit recently explained, in the securities law context, that "Disgorgement is designed to deprive a wrongdoer of unjust enrichment." SEC v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1113–14 (9th Cir. 2006) (quoting SEC v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998)). Disgorgement should include "all gains flowing from the illegal activities." Id., at 1114. In making this calculation, the Court has "broad discretion," and needs only a "reasonable approximation of profits causally connected to the violation." Id., at 1113–1114.

Here, Defendants practice of creating and delivering unverified checks is an unfair business practice under the FTC Act. (See supra, at 4–5.) Because all checks, both fraudulent and legitimate, were created without verification, the appropriate measure of disgorgement is Neovi's total revenue. In light of this, the Court finds that Neovi's tax returns constitute a "reasonable approximation of profits causally connected to the violation." JT Wallenbrock, 440 F.3d at 1114.

Notwithstanding the proper amount of disgorgement, Defendants argue that the tax returns should not be considered because they were not properly authenticated. (Def. Supp. Br., at 2.) Defendants claim that although the "returns were made exhibits to the Declaration of James M. Danforth, . . . the relevant portions of his testimony were not made a part of the FTC's Exhibit book." (Id.)

Federal Rule of Evidence 901 requires that an item be authenticated "by evidence sufficient to support a finding that the matter in question is what its proponent claims" prior to its admission into evidence. This finding is governed under the conditional relevancy standard of Rule 104(b). Fed. R. Evid. 901(a) advisory committee note. Under Rule 104(b), "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find

1  the conditional fact . . . by a preponderance of the evidence." Huddleston v. United States, 485
2  U.S. 681, 690 (1988).
3       The Court finds that the tax returns have been properly authenticated. Plaintiff submitted
4  Defendant Danforth's declaration authenticating the tax returns in a supplemental brief.[12] (See
5  Doc. No. 114, at 7–14.) Moreover, Defendants do not allege that Defendant Danforth did not
6  actually authenticate these documents, nor do they argue that the tax returns are forgeries. This
7  showing clearly satisfies the Rule 104(b) requirement because a jury could reasonably find, based
8  on this testimony, that the tax returns are authentic by a preponderance of the evidence.[13]
9       Defendants' arguments also do not justify a reduction in the total disgorgement figure.
10 Development and maintenance costs might, in other situations, be offset against revenue, but here
11 development and maintenance facilitated and contributed to the check fraud. Moreover,
12 Defendants do not offer evidence showing exact costs or expenses which the Court could
13 reasonably use in its calculations. Therefore, the Court finds that disgorgement in the amount of
14 $535,358 is appropriate and that Defendants are jointly and severally liable.[14]
15 //
16 //
17 //
18 //
19 //
20 //

---

[12] At oral argument, Defendants objected to the Court considering this evidence. Defendants' objection is **OVERRULED**. Although this evidence was submitted as an exhibit to a supplemental reply brief, no rule prohibits Plaintiff from submitting new evidence with such a brief.

[13] Moreover, Plaintiff presented other evidence sufficient to authenticate Neovi's tax returns. First, Defendants Neovi, Inc., G7 Productivity Systems, Inc., and James Danforth each admitted that "all documents . . . produced in response to discovery requests in this litigation are true and correct copies of the original documents." (Doc. No. 97-3, at 315, 366, & 417.) Moreover, these tax returns have indicia, on their face, indicating their authenticity. They are labeled "Form 1120 U.S. Corporation Income Tax Return," indicate that the taxpayer is "Neovi Inc," and are signed "James M Danforth." (See, e.g., id.) These facts carry Plaintiff's burden under Rule 104(b).

[14] This Court's prior order held that Defendants are jointly and severally liable for any judgment in this case. (See MSJ Order, at 15–17.) Since Defendants have not challenged the Court's finding of joint and several liability, it is not addressed here.

**CONCLUSION**

For the reasons discussed above, the Court **DENIES** Defendants' motion for reconsideration. The Court also **GRANTS** Plaintiff's motion for summary judgment. The Court shall separately enter an injunction against Defendants. Finally, the Court **DENIES** as moot Plaintiff's motion to strike.

IT IS SO ORDERED

DATED: January 7, 2009

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge