LAURA SCHNEIDER
lschneider@ftc.gov, (202) 326-2604 (tel.)
KORIN K. EWING
kewing@ftc.gov, (202) 326-3556 (tel.)
Federal Trade Commission
600 Pennsylvania Avenue, NW, M-8102B
Washington, DC 20580
(202) 326-2558 (fax)

JOHN D. JACOBS
Cal. Bar No. 134154
Federal Trade Commission
10877 Wilshire Boulevard
Suite 700
Los Angeles, CA 90024
(310) 824-4360
(310) 824-4380 (fax)

ATTORNEYS FOR PLAINTIFF
FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>NEOVI, INC., d/b/a NEOVI DATA CORPORATION and QCHEX.COM, et al.,<br><br>Defendants. | CASE NO. 06 CV 1952 JLS (JMA)<br><br>**FEDERAL TRADE COMMISSION'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS CONTEMPT MOTION AGAINST THOMAS VILLWOCK, JAMES M. DANFORTH, G7 PRODUCTIVITY SYSTEMS, INC., IPROLOG CORPORATION, AND FREEQUICK WIRE CORPORATION**<br><br>Hearing Date: July 15, 2010<br>Time: 1:30pm<br>Courtroom 6<br>Judge: Hon. Janis L. Sammartino |

## I. INTRODUCTION

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), submits this Supplemental Memorandum in support of its motion for the Court to hold Thomas Villwock, James M. Danforth, G7 Productivity Systems ("G7"), iProlog Corporation ("iProlog"), and FreeQuick Wire Corporation (collectively "Contempt Defendants") in contempt.  In its initial Motion for Order to Show Cause Why Contempt Defendants Should Not Be Held in Contempt ("Contempt Motion"), the FTC demonstrated that Contempt Defendants have been violating the Final Order for Permanent Injunction and Other Equitable Relief ("Final Order") entered on January 7, 2009 through their operation of www.FreeQuickWire.com ("FQW").  Specifically, the FTC showed that Contempt Defendants are creating and delivering checks through FQW without implementing *any* of the required account control and identity verification procedures, thereby leaving unsuspecting consumers' financial accounts vulnerable and "ringing the dinner bell for fraudsters."

Evidence acquired since filing the Contempt Motion, including Contempt Defendants' own testimony,[1] demonstrates clearly and convincingly that Contempt Defendants are blatantly violating the Final Order not only through their operation of FQW but also through two additional products: VersaCheck® 2010 software and newly-released Qchex check creation templates.  VersaCheck® 2010 software, released four months after entry of the Final Order, enables users to "create" checks from their home computers without any of the required verification procedures.  Contempt Defendants also have integrated FQW into the VersaCheck® software to allow customers to "deliver" VersaCheck®-created checks over the Internet, again without any of the Court-ordered safeguards.  Even more astounding, in June

---

[1] In addition to this evidence, since filing the Contempt Motion and pursuant to Section IV of the Final Order, the FTC demanded written reports and the production of documents from Contempt Defendants.  To date, Contempt Defendants have not provided full responses to these demands and are, thus, in contempt of the Compliance Monitoring provisions of the Final Order.  The FTC also subpoenaed documents and information from FreeQuick Wire Corp. and its nominal owner and Director, Diana Villwock.  To date, neither Diana Villwock nor FreeQuick Wire Corp. has responded to the subpoena.  The FTC seeks to preclude Contempt Defendants from presenting any evidence related to these questions or demands.

2010, Contempt Defendants launched more violative products – check creation templates – through Qchex.com that also allow users to create checks to print or deliver via email without any account or identity verification protocols as required by the Final Order.

As stated in the Contempt Motion, Contempt Defendants' utter disregard of the Final Order warrants both coercive and compensatory sanctions.  Contempt Defendants' complete disregard for the court's Final Order warrants imprisonment, or at the very least a per diem fine of $10,000, to coerce them to comply.  Moreover, in addition to the compensatory remedy requested in the Contempt Motion (Contempt Defendants' revenues obtained from the operation of FQW), monetary relief also should include all revenues generated from sales of VersaCheck® 2010 software as well as sales of paper, ink, and Validation Codes associated with the use of VersaCheck® software and the new Qchex.com templates.[2]  Anything less would allow Contempt Defendants to benefit from their contempt.[3]

**II.     ADDITIONAL EVIDENCE DEMONSTRATES CLEARLY AND CONVINCINGLY THAT CONTEMPT DEFENDANTS ARE CREATING AND DELIVERING CHECKS IN VIOLATION OF THE FINAL ORDER.**

   **A.     Contempt Defendants Have Confirmed Their Control and Participation in Creating and Delivering Checks Using FQW.**

During depositions taken in January 2010, Contempt Defendants Villwock and Danforth confirmed their control of Contempt Defendants G7 and iProlog, as well as Contempt

---

[2] The FTC recently made a demand for an accounting of these revenues pursuant to the Final Order's Compliance Monitoring requirements in Section IV, however, the due date for responding to the demand has not yet passed.  Assuming the FTC receives a full accounting of these figures, it will then provide the Court with a recommendation of an appropriate disgorgement amount.

[3] As noted in the Contempt Motion, Contempt Defendants' contumacious conduct constitutes changed circumstances that justify the entry of a modified order pursuant to Federal Rule of Civil Procedure 60(b).  Specifically, in order to achieve the Final Order's purpose of protecting consumers, the Defendants should be banned from creating or delivering checks for a customer or assisting others in creating or delivering checks.  The Ninth Circuit has now affirmed this Court's Final Order, however, this Court will not regain jurisdiction to modify the Final Order until the Ninth Circuit issues its mandate, which may be further delayed because this week, the Defendants filed for a rehearing *en banc*.  Once the mandate issues, the FTC will renew its motion to Modify the Final Order.

Defendants' active role in the development and operation of FQW. Specifically, Contempt Defendants admit that they direct and control both G7 and iProlog, and that they use iProlog employees to create, operate, and maintain G7's software programs.[4] (PX 65, Danforth for iProlog Dep. at 7-9, 31-35, 40-50, 64, 67-68, 90, 92; PX 61,Villwock Dep. at 22-23, 27, 39-40, 71, 113, 158, 173, 208; PX 63, Danforth for G7 Dep. at 24, 26, 39, 41-45, 49, 51, 59, 61-66, 71-72, 80-81; PX 64,Villwock for G7 Dep. at 242-244; PX 66, Villwock for iProlog Dep. at 6-8, 13-21).

Contempt Defendants further admit that iProlog employees developed FQW using iProlog resources (PX 61,Villwock Dep. at 75, 90-91 (stating that "no one" other than Villwock, iProlog trainee Diana Villwock, and iProlog software programmer Steffen Reichert was on the "team" that developed FQW), 92-93, 97-99, 158; PX 65, Danforth for iProlog Dep. at 78-81 (testifying that iProlog employees developed graphics for FQW and that no systems other than those of G7 and iProlog were used in developing FQW), 81-82; PX 66, Villwock for iProlog Dep. at 27-28; PX 67, D. Villwock Dep. at 25-27, 36, 55-59, 61, 74-75) that they and their iProlog employees suggested and created content for FQW (PX 61,Villwock Dep. at 78, 104 (testifying that he "author[ed] some of this [content of FQW] or assist[ed] in it"), 116-117 (testifying that a "team" of Villwock, Danforth, and Diana Villwock authored the "Need

---

[4] Similar to Neovi's relationship with G7, iProlog (Neovi's successor) operates as a common enterprise with G7, including through common control, commingling of funds and operations between the corporations; the routine performance of work by an employee of one corporation for the other corporation; and the integration of technology between the corporations, including software. (PX 61,Villwock Dep. at 90-91, 158; PX 63, Danforth for G7 Dep. at 41-51, 59-66, 71-72, 80-81, 123-24; PX 65, Danforth for iProlog Dep. at 9, 11-12, 16, 27, 31-50, 67-68, 90, 110-111; PX 66, Villwock for iProlog Dep. at 12-21). *See SEC v. Elliott*, 953 F.2d 1560, 1565 n.1 (11th Cir.1992) (commingling of corporate funds and failure to maintain separate of companies); *Sunshine Art Studios, Inc. v. FTC*, 481 F.2d 1171, 1175 (1st Cir.1973) (common control); *Waltham Precision Instrument Co. v. FTC,* 327 F.2d 427, 431 (7th Cir. 1964) (common control); *Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir.1964) (business transacted through a maze of interrelated companies); *FTC v. JK Publ'ns, Inc.*, 99 F. Supp.2d 1176, 1201-02 (C.D. Cal. 2000) (common control, sharing of employees, and conducting business through a maze of interrelated companies); *FTC v. Jordan Ashley*, 1994-1 Trade Cases (CCH) ¶ 70,570 at 72,094, 72,095 (S.D. Fla. 1994) (no real distinction existed between the Corporate Defendants).

Validation?" webpage on FQW), 158; PX 65, Danforth for iProlog Dep. at 78-80); and that they edited and reviewed that content (PX 61,Villwock Dep. at 78, 101-102). They also admit that pages found on FQW are substantially identical to those previously used on Qchex.com. (PX 61,Villwock Dep. at 116-117 (confirming that the "Need Validation?" webpage is on both FQW and Qchex.com), 124-125; PX 64, Danforth for G7 Dep. at 177-78; *compare* PX2, L. Lewis Dec., Att. A, Pages 2-3, 12 *with id.*, Att. C, Pages 2-5, 14).[5]

      Contempt Defendants also admit that FQW allows users to create and deliver checks, (PX 61, Villwock Dep. at 89 (testifying that FQW "invites someone who is interested to send a check"); PX 56, Danforth for iProlog Dep. at 49-56 (testifying that he used FQW in January 2010 to "see if [he] could produce a check" and successfully printed a FQW check at his desktop after he "delivered" the check "data" to his email account as the recipient); PX 67, D. Villwock Dep. at 43-45), and that the operation of FQW relies on and uses the products of Contempt Defendants G7 and iProlog. For example, FQW incorporates iProlog software, including a Messenger program, an Account Product License Manager program, and TrueSign digital signing technology, all of which are necessary to the operation of FQW. (PX 61,Villwock Dep. at 106-113, 133-134; PX 65, Danforth for iProlog Dep. at 52-55, 57-58, 63, 70, 83-84, 86; PX 66, Villwock for iProlog Dep. at 14-28; PX 67, D. Villwock Dep. at 38, 54-59, 66, 69-71). Contempt Defendants further admit that, at least until January 2010, FQW: explicitly required the use of G7 VersaCheck blank check paper and VersaInk or VersaToner to print checks sent via the website (PX 67, D. Villwock Dep. at 49-52, 64); required check

---

[5] In the face of this overwhelming evidence of their direct participation in check creation and delivery through FQW, Contempt Defendants concocted an unsubstantiated story that Villwock's college-aged daughter, Diana, created and controlled FQW (with substantial help from Villwock, Danforth, and several iProlog employees) while working as a "trainee" at iProlog. In Fall 2008, Diana purportedly sold FQW to MIPS Dataline Technologies GmbH ("MIPS"), a German company owned by Villwock's brother with whom the Contempt Defendants have a long-term relationship (PX 62, Danforth Dep. at 21; PX 63, Danforth for G7 at 17-18). Despite being served with written requests and subpoenas demanding the production of any agreements, sale papers, or any other documents related to a purported sale, to date, neither Diana Villwock nor any Contempt Defendant has produced any such documents. (PX 67, D. Villwock Dep. at 96-99; PX 60, R. Lewis Supp. ¶¶ 117-118; *id.*, Att. V, W, CC).

recipients to input Validation Codes created and sold by G7 prior to allowing them to print checks received via FQW (PX 61,Villwock Dep. at 128-131, 192; PX 66, Villwock for iProlog Dep. at 22-23; PX 67, D. Villwock Dep. at 54-55, 63-64); and relied on contacting a database created and maintained by G7 and iProlog in order to determine whether the entered Codes were valid.  (PX 66, Villwock for iProlog Dep. at 21-26; PX 67, D. Villwock Dep. at 68-69). Contempt Defendants also admit that, at least until January 2010, G7 advertised FQW on its website and provided hyperlinks to FQW from its website (PX 61,Villwock Dep. at 183-188; PX 63, Danforth for G7 Dep. at 105-112), while FQW advertised G7 products on its website and provided hyperlinks to G7 from its website.[6]  (PX 61,Villwock Dep. at 197; PX 67, D. Villwock Dep. at 52-53, 59-61, 67).

Perhaps most importantly, Contempt Defendants admit that FQW does not verify users' identities or account authorizations prior to allowing users to create and deliver checks and that Contempt Defendants have taken no steps to put into place any of the required security protocols on FQW.  (PX 61, Villwock Dep. at 118-19 (confirming that "the team, Diana, myself and Jim" discussed and dismissed the idea of including identity and account verifications on FQW); 192-193; PX 65, Danforth for iProlog Dep. at 86-87; PX 67, D. Villwock Dep. at 45-46 (confirming that FQW did not "do anything to verify that the person inputting . . . financial account information [into FQW], had authority over that financial account;" did not "do anything [aside from validating access to email address] to verify that the person inputting the information, including the name of the payer, was who he said he was;" did not "hire anyone to do any type of verification on their behalf;" and did not "do any

---

[6] Contempt Defendants claim that in January 2010, they made changes to FQW and to G7's website, www.g7ps.com.  Despite any superficial changes, G7 continues to advertise and promote FQW in its products (PX 60, R. Lewis Supp., Att. E, Page 6), and FQW still calls for check recipients to purchase G7 products in order to print checks and directs FQW check recipients to G7's website (PX 60, R. Lewis Supp. ¶¶ 8-13, 19-22, 24, 27, 29-36; *id.*, Att. A, Att. B., Pages 20-26, 28-29, Att. C, Pages 16-18, 24-57).  In addition, FQW continues to advertise G7 products at the bottom of each printed check page.  (PX 60, R. Lewis Supp., Att. C, Pages 24, 58).  Moreover, as discussed above, FQW continues to rely on iProlog and G7 products and software for its operations.

type of micro-deposits into any users' accounts"); *id.* at 87-88).  They also admit that they have taken absolutely no steps to attempt to institute such verifications at G7 or iProlog.  (PX 61,Villwock Dep. at 170-171 (testifying that G7's only compliance efforts have been to respond to the "six months review" and to determine "whether there were any services G7 offered after the order that relate to check creation and delivery of checks to be drawn on other people's bank account, and the answer to that is no" (*sic*)); PX 62, Danforth Dep. at 43-44; PX 65, Danforth for iProlog Dep. at 77-78).

These admissions, along with the evidence previously submitted by the FTC in support of its Contempt Motion, clearly and convincingly show that Contempt Defendants, under the direction of Villwock and Danforth, are violating the Final Order through FQW.  FQW allows users to create checks, to deliver those checks electronically, and to print those checks.  FQW relies on and incorporates software owned by and licensed from Contempt Defendant iProlog, as well as products sold by and a database maintained by Contempt Defendant G7.  G7 continues to advertise and promote the use of FQW, and FQW continues to tell its users that G7 Validation Codes, G7 blank check paper, and G7 ink are required to be able to print FQW checks.  (PX 60, R. Lewis Supp. ¶¶ 19-22, 24, 27, 29-36; *id.*, Att. B, Pages 20-26, 28-29, Att. C, Pages 16-18, 24-57, Att. E, Page 6).

Incredibly, Contempt Defendants' violative practices committed through FQW have continued at least through May 2010.  Indeed, the FTC again created and delivered a FQW check – drawn on the same bank account used in the undercover check transactions described in the Contempt Motion – without encountering any attempts to verify identity or account authorization as required by the Final Order.  (PX 60, R. Lewis Supp. ¶¶ 14-18, 23-37, 114).

  **B.** **Contempt Defendants Also Create and Deliver Checks Through G7's VersaCheck® Software Without Verifying Identity or Account Authorization.**

Beyond confirming Contempt Defendants' roles in creating and delivering checks using FQW, however, the FTC has discovered that, since entry of the Final Order, Contempt Defendants have launched new products that offer users even more opportunities to "create"

and "deliver" checks without validating their identities or authorization to use financial accounts. Specifically, without any of the security protocols required by the Final Order, Contempt Defendants' VersaCheck® software: 1) creates checks through its stand-alone check creation software; and 2) delivers checks using FQW, which is integrated into the VersaCheck® software.[7]

### 1. VersaCheck® Software Creates Checks for Customers Without Confirming Their Identity or Account Authorization.

Along with its blank check paper and ink products, G7 sells a line of software called VersaCheck®, which it describes as "check creation software." (PX 60, R. Lewis Supp., Att. D, Pages 1-3). Specifically, VersaCheck® software enables purchasers to download a program to their computers to "create & print" personal-sized, business-sized, and custom checks. (PX 60, R. Lewis Supp., Att. D, Pages 2-3). The most recent version of VersaCheck® software, VersaCheck® 2010, was released four months after entry of the Final Order.[8] (PX 60, R. Lewis Supp., Att. D, Pages 29-31). But, despite the clear mandate of the Final Order, Contempt Defendants have taken absolutely no steps to validate the identity or account authorization of VersaCheck® 2010 users before being "involve[d] in the creating, designing, composing, drawing, or writing on paper or electronic media a check drawn on a specific financial institution." (Final Order at 3, definition of "creating a check").

First, there is no doubt that VersaCheck® software creates checks. Contempt Defendants admit that VersaCheck® software "lets people create and print their own checks."

---

[7] Each Contempt Defendant is in active concert and participation with the other Contempt Defendants in creating and delivering checks using VersaCheck®. G7 sells VersaCheck® software as a G7 product. iProlog employees created VersaCheck® software and continue to provide software and customer service consulting services to G7 with regard to VersaCheck®. (PX 61, Villwock Dep. at 173). Danforth and Villwock control and direct the operations of G7 and iProlog, including all aspects of the VersaCheck® software and its use of FQW. (*See supra* p. 2-3).

[8] While G7 has offered VersaCheck® software for a number of years, the most recent version of the software, prior to the April 2009 launch of VersaCheck® 2010, was the VersaCheck® 2008 version released in June 2007. (PX 60, R. Lewis Supp., Att. D, Pages 26-28).

(PX 64, Danforth for G7 at 154; *see also* PX 61, Villwock Dep. at 172, 179-180 (confirming that VersaCheck® enables purchasers to create checks); PX 63, Danforth for G7 Dep. at 14; PX 65, Danforth for iProlog Dep. at 90-91). Contempt Defendants also highlight the fact that VersaCheck® is check creation software in advertisements, product packaging, and user guides for the product. (PX 60, R. Lewis Supp., Att E, Page 1 (describing VersaCheck® as the "#1 Finance & Check Creation Software"); *id.*, Att. E, Page 2 (highlighting the ability of different versions of VersaCheck® to enable purchasers to "create" personal and business checks); *id.*, Att. M, Pages 5-7 (User Guide explaining that "[t]here are several ways to create checks using your VersaCheck software" and that the "Write Checks" screen "allows you to write checks drawn off of any bank or money market account that you setup with an electronic checkbook in VersaCheck")).

Second, there also can be no doubt that Contempt Defendants' VersaCheck® 2010 software violates the Final Order. Testifying on behalf of G7, Danforth confirms that VersaCheck® software does not "include any protocols or programs that validate purchasers' identities or account authorization before those users are allowed to use the software to create checks." (PX 64, Danforth for G7 Dep. at 158; *see also* PX 64,Villwock for G7 Dep. at 249 (confirming that there are no programs within VersaCheck® software that "require users to authenticate that they have authority over the banking accounts that they're going to use when creating checks using that software"); PX 61 Villwock Dep. at 173).

As further confirmation of these violations, an FTC investigator purchased and used the VersaCheck® Gold 2010 software to create two checks. The investigator used the same undercover identities and bank account information used in the transactions described in the FTC's Contempt Motion. (PX 60, R. Lewis Supp. ¶¶ 53-58, 75-82; *id.*, Att. K, Pages 1-33, 51, Att. L, Pages 1-29, 34). Using VersaCheck®, the investigator was able to select a design for the checks, including an option to insert a bank logo on the check image, and to fill in the payor, payee, bank account, and amount information. (PX 60, R. Lewis Supp. ¶¶ 53-57, 76-79; *id.*, Att. K, Pages 8-26, Att. L, Pages 9-12). As with FQW, the investigator was able to use

iProlog's TrueSign program to create a digital signature for the checks. (PX 60, R. Lewis Supp. ¶¶ 80-81; *id.*, Att. L, Pages 17-22). The printed checks appear virtually identical to those created using FQW. (PX 60, R. Lewis Supp., Att. C, Pages 24, 58, Att. K, Page 51, Att. L, Pages 34, 47). Neither before, during, nor after the investigator created the checks using VersaCheck® did anyone acting on behalf of the Contempt Defendants contact the investigator to confirm his undercover identity or his authority to draft checks on the specified financial account (authority which he did not have, as the investigator intentionally used a second identity's financial information). (PX 60, R. Lewis Supp. ¶114).

Thus, since at least April 2009, Contempt Defendants have sold VersaCheck® "check creation software" that enables purchasers to create checks on their home computers, without implementing *any* of the identity or account verification procedures required by the Final Order.

### 2. VersaCheck® Software Uses FQW to Deliver Checks for Customers Without Confirming Their Identity or Account Authorization.

Contempt Defendants are also "delivering" checks in violation of the Final Order through VersaCheck® by "e-mailing, sending, or transmitting . . . a check drawn on a specific financial institution." (Final Order at 3, definition of "delivering a check"). Indeed, Contempt Defendants' advertising, product packaging, and online information explicitly highlight the fact that in addition to "creating" checks, VersaCheck® 2010 software delivers checks via the Internet through the integration of FQW. (PX 60, R. Lewis Supp., Att. E ( highlighting features of VersaCheck® Gold 2010, including "Send & Receive E-mail Checks" and "NEW! ProVision – Online check delivery and approval service to send, approve, receive & print checks – anytime, anywhere!"); *id.* ¶¶ 95-99; *id.*, Att. M, Pages 11-25 (VersaCheck® 2010 Online Guide confirming that email functions use FQW and that recipients of VersaCheck® checks need to download the FQW Messenger program in order to retrieve checks); *see also id.*, Att. E, Pages 8-9).

Moreover, an FTC investigator confirmed that the VersaCheck® software integrates FQW. Specifically, VersaCheck® uses the FQW icon (a yellow and blue circle) for its "Send

Checks" button (PX 60, R. Lewis Supp. ¶51; *id.* Att. K, Page 1); the investigator received emails from FQW alerting him to the fact that his checks were sent using FQW (*id.* ¶¶ 70-71, 90; *id.*, Att. K, Pages 66-71, Att. L, Pages 55-58); and when the investigator clicked the "Receive E-Mail Checks" button in VersaCheck® (also identified with the FQW icon), the software program required him to "sign up" for FQW (and opened a window to FQW to create a FQW account) before it would retrieve email checks (*id.* ¶¶ 67-68; *id.* Att. K, Pages 58-61).

Not surprisingly, Contempt Defendants make no effort to confirm identity or account authorization before allowing users to deliver VersaCheck®-created checks through FQW. Indeed, the investigator's checks were delivered via FQW to the undercover email account within moments of clicking the "Send" button in VersaCheck®. (PX 60, R. Lewis Supp. ¶¶ 59-60, 70-71, 90; *id.*, Att. K, Pages 37-39, 69-71, Att. L., Pages 55-58).

### C. Contempt Defendants Recently Launched a New Version of Qchex.com to Create and Deliver Checks With No Apparent Effort to Validate Identity or Account Authorization.

Incredibly, on June 21, 2010, Contempt Defendants announced the launch of yet another check creation product using the renewed Qchex.com website and confirmed that they will, again, make no effort to validate the identity or account authorization of customers. (PX 60, R. Lewis Supp., Att. Q, Pages 1-6, Att. R, Pages 5-6). Until recently, the Qchex.com website informed visitors that the website had "discontinued its service to restructure and improve key service levels." (PX 2, L. Lewis Att. C, Page 1). As a result, visitors to Qchex.com could not create or deliver checks using the website. On June, 21, 2010, however, the website's homepage proudly announced that visitors can "Create, Send and Receive Your Checks for FREE!" using check templates downloaded from Qchex.com that work with either Adobe Acrobat or Microsoft Word. (PX 60, R. Lewis Supp., Att. R, Page 1). As described in the press release issued by iProlog, Qchex.com's check templates "allow millions of consumers and businesses nationwide a quick and convenient means to *create*, print and/or *deliver* checks via email." (*Id.*, Att. R, Page 5) (emphasis added). In fact, according to iProlog, "these new check templates demonstrate the ease with which checks can be created and delivered electronically by a large segment of the population without having to pay any

fees for the service." (*Id.*, Att. R, Page 6). Consistent with their other business operations, however, while downloading the templates may be free, Contempt Defendants encourage users to purchase and use G7 paper and ink products in printing the checks. (PX 60, R. Lewis Supp. ¶ 112; *id.* Att. S, Page 14).

Significantly, Contempt Defendants admit that they have not employed the Court's required identity and account authorization verifications in connection with downloading these new Qchex.com templates. As iProlog explains in its press release, the Qchex.com templates "allow users to enter check book information for an *unlimited* number of bank accounts with ultimate privacy and *without any need to disclose sensitive financial and personal information to third parties – a popular and risky data gathering practice applied by electronic fund transfer providers that exposes consumers to becoming ID theft victims*." (PX 60, R. Lewis Supp. Att. R, Page 5) (emphasis added). Contempt Defendant Villwock expresses no concern for this complete disregard for the court's Final Order:

> I would like to briefly comment on 'safety.' The free and unrestricted access to easy to use check templates makes clear to the public, that anyone can create and send checks without verification and therefore it cannot be assumed that all checks are valid. Checks are only as trustworthy as the parties involved in the transaction. Fraudulent creation of a printed check CANNOT be prevented because technology available to everyone has made check creation a trivial task . . . .We, as technicians, only provide the tools necessary for the public to enhance user experience and help ensure checks meet layout and scanning standards necessary for flawless processing through the automated check clearing system.

(PX 60, R. Lewis Supp., Att. R, Pages 5-6).

By releasing this check creation product less than one month before their scheduled contempt hearing, Contempt Defendants make clear that they have no intention of complying the Final Order.[9]

---

[9] On June 29, 2010, after the FTC raised its concerns regarding the new Qchex.com templates with defense counsel, Contempt Defendants temporarily blocked users from downloading the templates. In an "Important Message" posted to the Qchex.com homepage, Contempt Defendants state: "Download and use of check form templates from the internet may require authentication of bank account information and identity of its users. Pending court approval, FREE 'Downloads' of check templates are currently unavailable from this site." (PX 60, R. Lewis Supp., Att. R, Page 1). This temporary block, however, does not change the fact that Contempt Defendants provided the free downloads for more than a week and widely disseminated the press release announcing their availability. (PX 60, R. Lewis Supp. ¶ 105, Att.

### III. CONTEMPT DEFENDANTS SHOULD INCUR SANCTIONS.

In light of Contempt Defendants' blatant disregard for the Final Order, as well as the harm they continue to cause consumers by offering their products and services without implementing the required security account and identity verification procedures, both coercive and compensatory sanctions are warranted.

#### A. Coercive Sanctions

Not only have Contempt Defendants failed to take a single step to implement the required security protocols on FQW, but they have expanded their check creation and delivery services through their VersaCheck® software, which integrates and relies on FQW, and through their newly released Qchex.com templates. Moreover, Contempt Defendants concocted a story to create the illusion of severed ties with FQW, but the evidence is overwhelming that they jointly operate FQW, profiting from the sale of paper, ink products, and Validation Codes to users of FQW, VersaCheck®, and, now, Qchex.com. In sum, Contempt Defendants have demonstrated complete disregard for this Court's Final Order – continuing a business model that freely allows fraudsters to create and deliver checks with no attempt to confirm their identities or account authorization, regardless of what harm may be caused by their actions.

Contempt Defendants' continuing and utter disregard for this Court's Final Order warrants incarceration to coerce them to cease creating and delivering checks without the required identity and account verification protocols. At the very least, the FTC seeks a daily per diem fine that is large enough to exert substantial coercive pressure, such as $10,000 per day, until Contempt Defendants comply with the Final Order.

#### B. Compensatory Sanctions

In addition to the monetary relief requested in the FTC's Contempt Motion (Contempt Defendants' total revenue from creating and delivering checks through FQW), Contempt

---

Q, Pages 7-10). Moreover, temporarily blocking the download will not prevent users who already downloaded the templates from creating checks without any identity or account verifications.

1  Defendants should also disgorge all revenues since entry of the Final Order from the sale of
2  VersaCheck® 2010 software, from sales of paper, ink, and validation codes used on
3  VersaCheck® software to create or deliver checks since entry of the Final Order,[10] and from
4  recent distribution of Qchex templates.  Because iProlog's Messenger program, used in both
5  FQW and VersaCheck®, requires e-check recipients to enter Validation Codes from G7
6  products before they can print checks, Contempt Defendants should have records reflecting the
7  type and quantity of G7 products actually purchased for use with FQW and VersaCheck®.
8  Allowing Contempt Defendants to retain any of these revenues would unjustly reward them for
9  their utter disregard of this Court's Final Order.

## IV.    CONCLUSION

Contempt Defendants flagrantly continue to violate the Final Order's core conduct prohibitions thus continuing to facilitate fraudsters' ability to use false identity information and to draw checks on unsuspecting consumers' accounts.  They have thumbed their nose at the Court in blatant violation of the Final Order.  For the foregoing reasons and those set forth in the FTC's Contempt Motion, the FTC requests that the Court enter a Contempt finding against Contempt Defendants and order the requested coercive and compensatory sanctions.

Date Submitted: July 2, 2010                              Respectfully submitted,

                                                                           /s/ Laura Schneider

                                                                          Laura Schneider
                                                                          Korin K. Ewing
                                                                          Attorneys for Plaintiff
                                                                          FEDERAL TRADE COMMISSION

---

[10] Contempt Defendants' use of FQW to deliver VersaCheck®-created checks does not seem to be limited to VersaCheck® 2010 software.  Indeed, it appears that users of VersaCheck® 2007 and 2008 software ultimately connect to FQW to deliver and receive checks via the Internet without any identity or account authorization verifications. (PX 60, R. Lewis Supp., Att. N, O; *see also* PX 64, Danforth for G7 Dep. at 191-92; PX 3, R. Lewis Att. K (previously submitted to the Court) (insert for VersaCheck® blank check paper refills advertising that VersaCheck® 2008 users may download software updates to "integrate powerful FreeQuickWire™ features with VersaCheck®").

**Index of Exhibits**

Exhibits to Supplemental Memorandum

PX 60    Supplemental Declaration of Ron Lewis. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5 (n.6), 6, 7, 8, 9, 10, 11, 13 (n.10)

PX 61    Excerpt of Deposition of Thomas Villwock dated January 12, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 7 (n.7), 8

PX 62    Excerpt of Deposition of James Danforth dated January 15, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 (n.5), 6

PX 63    Excerpt of Deposition of James Danforth on behalf of G7 dated January 14, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4 (n.5), 8

PX 64    Excerpt of Deposition of James Danforth and Thomas Villwock on behalf of G7 dated January 15, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 8, 13 (n.10)

PX 65    Excerpt of Deposition of James Danforth on behalf of iProlog dated January 13, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 8

PX 66    Excerpt of Deposition of Thomas Villwock on behalf of iProlog dated January 14, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

PX 67    Excerpt of Deposition of Diana Villwock dated January 14, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

Deposition Exhibits

The following exhibits referenced in deposition excerpts PX 61-67 are attached:

PX 12-20, PX 23-55, PX 59