1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11   FEDERAL TRADE COMMISSION,

12                                    Plaintiff,

13          vs.

14   NEOVI, INC., et al.,

15                                    Defendant.

CASE NO. 06-CV-1952 JLS (JMA)

**ORDER: DENYING DEFENDANTS' MOTION TO LIMIT THE SCOPE OF THE SHOW CAUSE HEARING**

(Doc. No. 187)

16
17          Presently before the Court is Defendants' motion to limit the scope of the show cause hearing

18   regarding contempt.  (Doc. No. 187.)  For the following reasons, the Court **DENIES** Defendants'

19   motion.

20                                    **BACKGROUND**

21          The parties in this case are well aware of the background of this matter.  Moreover, this Court

22   and the Ninth Circuit have both provided a full description of the underlying facts.  (*See* Doc. No. 105

23   (MSJ Order), at 2–8; *FTC v. Neovi, Inc.*, — F.3d —, 2010 WL 2362956, at *1–3 (9th Cir. June 15,

24   2010).)  Those factual summaries are incorporated by reference here.  However, this Order will

25   describe the procedural history relevant to the instant motion.

26          On September 16, 2008, the Court granted Plaintiff's motion for summary judgment, finding

27   that Defendants' Qchex system violated section 5 of the FTC Act, 15 U.S.C. § 45(n).  (Doc. No. 105.)

28   On January 7, 2009, the Court denied Defendants' motion for reconsideration (Doc. No. 117) and

entered a permanent injunction enjoining Defendants from "creating[1] or delivering[2] any check for a customer" without performing identity verification of prospective customers and account control verification (Doc. No. 118 (Final Order), at 4–5.)  Defendants timely appealed.  (Doc. No. 119.)

While Defendants' appeal was pending before the Ninth Circuit, Plaintiff moved for an order to show cause why Defendants should not be held in contempt.  (Doc. No. 156 (Contempt Motion).)  Plaintiff based its Contempt Motion on Defendants' "continuing operation of FreeQuickWire.com . . . , an electronic check creation and delivery service nearly identical to the Qchex and GoChex services that the Court found violated Section 5 of the FTC Act . . . ." (Mem. ISO Contempt Mot. 1.)  On November 13, 2009, the Court granted Plaintiff's motion and ordered Defendants to appear and show cause why they should not be held in civil contempt for failing to comply with the terms of the Final Order.  (Doc. No. 170.)  On December 22, 2009, the Ninth Circuit granted Defendants' request to expedite their appeal, and the Court vacated all dates associated with the show cause hearing pending resolution of Defendants' appeal.  (Doc. No. 177.)  On May 14, 2010, the Ninth Circuit affirmed in full the Court's Order denying Defendants' motion for reconsideration and the Final Order.  *See Neovi*, — F.3d —, 2010 WL 2362956, at *3–8.  On the same day, the Court reset the show cause hearing for July 15, 2010.  (Doc. No. 179.)

On July 2, 2010, Plaintiff filed supplemental briefing in support of its Contempt Motion.  (Doc. No. 182.)  Plaintiff's supplemental briefing cites two additional products Plaintiff believes violate the Final Order: "VersaCheck® 2010 software and newly-released Qchex check creation templates." (Supplemental Mem. ISO Contempt Mot. 1.)

At the July 15, 2010 show cause hearing, Defendants for the first time contended that the VersaCheck® 2010 software (VersaCheck) was not a proper subject of the contempt proceeding.  (Show Cause Hr'g Tr. 10–12.)  The Court invited briefing on the proper scope of the contempt

---

[1] The Final Order defines *creating* as "any involvement in the creating, designing, composing, drawing, or writing on paper or electronic media a check drawn on a specific financial institution." (Final Order 3.)

[2] The Final Order defines *delivering* as "any involvement in the mailing, faxing, e-mailing, sending, or transmitting by any other method a check drawn on a specific financial institution." (Final Order 3.)

1   proceeding. (*Id.* 13.) On September 23, 2010, the Court heard argument on the instant motion.[3] (Doc.

2   No. 194.)

3                                                    **ANALYSIS**

4          Defendants raise two arguments in support of their position that the show cause hearing should

5   be limited to whether the operation of FreeQuickWire.com (FQW) violates the Final Order.[4]  The

6   Court addresses each in turn.[5]

7   **I.       Defendants Had Adequate Notice That VersaCheck Might Violate the Final Order**

8          Defendants first contend that they did not have notice that VersaCheck might violate the Final

9   Order because the FTC never challenged Defendants' marketing of VersaCheck, even though

10  VersaCheck predated the FTC's enforcement action and the Final Order.  (*See* Mem. ISO Mot. Re:

11  Scope 5–6; Reply 2–3.)  Plaintiff responds that Defendants' contention is without merit because the

12  Final Order's "specific and definite language squarely applies to" VersaCheck.  (Opp'n 3.)  Plaintiff

13  also argues that the Final Order properly incorporates "fencing-in" provisions that apply beyond

14  Qchex.  (*Id.* 4–6.)

15         A court may frame an injunction based on violation of the FTC Act broadly enough to prevent

16  the defendant from engaging in similar illegal conduct in the future.  *FTC v. Colgate-Palmolive Co.*,

17  380 U.S. 374, 395 (1965); *see also NLRB v. Express Publ'g Co.*, 312 U.S. 426, 435 (1941) ("A federal

18  ─────────────────

19         [3] On September 10, 2010, Magistrate Judge Adler ordered Defendants to serve a disclosure
    for their expert witness, Dan M. Fisher, consistent with Federal Rule of Civil Procedure 26(a)(2), by
20  September 17, 2010. (*Id.* at 2.) At the Court's direction, Magistrate Judge Adler subsequently vacated
    the deadline for Mr. Fisher's disclosure pending the September 23, 2010 hearing on the instant order.
21  (Doc. No. 193.)  The Court resets the deadline for Mr. Fisher's disclosure *infra*.

22         [4] To be clear, the instant Order only decides the narrow issue of the scope of the contempt
    hearing—not the broader issue of whether Defendants' marketing of VersaCheck violates the Final
23  Order.

24         [5] As an initial matter, Defendants argue that "[the] Final Order at issue . . . [is] ambiguous,"
    and therefore, Defendants' marketing of VersaCheck should not be considered in the contempt
25  proceeding. (Mem. ISO Mot. Re: Scope 6.)  It is well established, however, that "a contempt
    proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been
26  disobeyed . . . ."  *United States v. Rylander*, 460 U.S. 752, 756 (1983) (quoting *Maggio v. Zeitz*, 333
    U.S. 56, 69 (1948)); *cf. In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 725–26
27  (9th Cir. 1989) ("[T]he collateral bar rule permits a judicial order to be enforced through criminal
    contempt even though the underlying decision may be incorrect and even unconstitutional.  The
28  contemnor cannot ordinarily raise the invalidity of the judicial order as a defense to a contempt
    charge." (citations omitted)).  Accordingly, Defendants may not challenge the validity of the Final
    Order in these contempt proceedings.

court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past."). "[C]ourts have often upheld FTC orders encompassing all products or all products in a broad category, based on violations involving only a single product or group of products . . . ." *Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 391 (9th Cir. 1982) (quoting *ITT Cont'l Baking Co. v. FTC*, 532 F.2d 207, 223 (2d Cir. 1976)) (alterations in original); *cf. Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1318 (9th Cir. 2004) (declining to hold that contempt proceeding should be unavailable with respect to pre-judgment devices not accused of infringement in the underlying action). Thus, "those caught violating the [FTC] Act must expect some fencing in." *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957).

Here, the Court's Order granting Plaintiff's proposed injunctive relief explicitly contemplated that the Final Order would apply beyond Qchex. (*See* Doc. No. 117, at 13 ("Defendants' pattern of conduct demonstrates a significant disregard for check fraud and a significant likelihood of future violation. . . . [F]ollowing the bankruptcy of Qchex, Defendants opened two more businesses offering the same basic functionality. Given the seriousness and deliberateness of Defendants' past record of violations, injunctive relief is appropriate." (citation omitted)).) And although Defendants purport to interpret the Final Order as narrowly applying to "a discrete line of G7's products," (Reply 4) the Final Order is clearly broader—it enjoins Defendants "from creating or delivering *any* check for a customer" (Final Order 4). Thus, to the extent that VersaCheck incorporates check creation and delivery functions, Defendants were on notice that Plaintiff might take the position that Defendants' continued marketing of VersaCheck violates the Final Order. Defendants cannot now seek to limit the scope of the show cause hearing because they failed to "expect some fencing in." *Nat'l Lead*, 352 U.S. at 431.

## II.   Plaintiff Should Not Be Estopped from Presenting Evidence of Contempt Based on Defendants' Marketing of VersaCheck

Defendants next contend that Plaintiff should be estopped from presenting evidence of Defendants' marketing of VersaCheck in support of Plaintiff's contempt allegations. (*See* Reply 5–7.) Plaintiff responds that Defendants cannot establish the requisite elements for estoppel against the

government.  (Opp'n 6–9.)

A party seeking to establish estoppel against the government must first demonstrate that the four requirements of equitable estoppel are met.  *United States v. Gamboa-Cardenas*, 508 F.3d 491, 502 (9th Cir. 2007).  "Those elements are '(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct.'" *Id.* (quoting *United States v. Hemmen*, 51 F.3d 883, 892 (9th Cir. 1995)).  In addition, a party seeking to estop the government must establish that (1) "the government has engaged in affirmative misconduct going beyond mere negligence" and (2) "the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." *Gamboa-Cardenas*, 508 F.3d at 502 (quoting *Pauly v. USDA*, 348 F.3d 1143, 1149 (9th Cir. 2003)) (internal quotation marks omitted).

"Affirmative misconduct requires an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Carrillo v. United States*, 5 F.3d 1302, 1306 (9th Cir. 1993). "[M]ere unexplained delay" does not amount to affirmative misconduct. *Jaa v. INS*, 779 F.2d 569, 572 (9th Cir. 1986); *see also Santamaria-Ames v. INS*, 104 F.3d 104 F.3d 1127, 1133 (9th Cir. 1996) (citing *INS v. Miranda*, 459 U.S. 14, 18–19 (1982)).

Here, Defendants' estoppel claim must fail.  Defendants have given the Court no reason to believe that Plaintiff's delay in identifying VersaCheck as illegal resulted from "affirmative misconduct going beyond mere negligence . . . ." *Gamboa-Cardenas*, 508 F.3d at 502.  Plaintiff's "mere unexplained delay" in asserting that Defendants' marketing of Qchex violates the Final Order is insufficient to establish the affirmative misconduct required for estoppel against the government. *Jaa*, 779 F.2d at 572. And the Court's order granting Plaintiff's proposed injunctive relief, which explicitly contemplated that the Final Order would apply beyond Qchex, undermines Defendants' claim that Plaintiff affirmatively misrepresented the scope of its investigation as limited to Qchex. (*See* Doc. No. 117, at 13.)

## CONCLUSION

For the reasons stated, Defendants' motion to limit the scope of the show cause hearing is

**DENIED**.  At the show cause hearing, Plaintiff may present its case as to why Defendants' marketing of VersaCheck violates the Final Order.  No later than <u>October 18, 2010</u>:

    (1)    Defendants **SHALL SERVE** Plaintiff with a disclosure for their expert witness, Mr. Fisher, consistent with the requirements of Federal Rule of Civil Procedure 26(a)(2); and

    (2)    The parties **SHALL EXCHANGE** lists of exhibits and witnesses to be offered at the show cause hearing.

    IT IS SO ORDERED.

DATED:  September 27, 2010

_Janis L. Sammartino_
Honorable Janis L. Sammartino
United States District Judge

- 6 -

06cv1952