**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

FEDERAL TRADE COMMISSION,

Plaintiff,

vs.

NEOVI, INC., d/b/a NEOVI DATA CORPORATION and QCHEX.COM, et al.,

Defendants.

CASE NO. 06-CV-1952 JLS (JMA)

**ORDER IMPOSING SANCTIONS**

Presently before the Court is the issue of what sanctions the Court should impose for Thomas Villwock ("Villwock"), G7 Productivity Systems ("G7"), iProlog Corporation ("iProlog"), and FreeQuick Wire Corporation's ("FQW," and, collectively, "Contempt Defendants") continued failure to purge their noncompliance with this Court's January 7, 2009 Final Order.[1] Contempt Defendants and Plaintiff Federal Trade Commission ("the FTC") previously submitted briefs addressing the issue (*see* ECF Nos. 338, 337), as well as reply briefs (*see* ECF Nos. 339, 340). These briefs were submitted prior to the Court's granting Jones Day's Motion to Withdraw as Counsel for Villwock and Danforth, and James C. Stevens' Motion to Withdraw as Counsel for G7 and iProlog. No additional briefs have been submitted on the issue of sanctions;

[1] Defendant James Danforth has reached a settlement with the FTC.

however, the issue has been mentioned in some of the recent filings, which will be addressed in this Order.

Having considered the parties arguments and the law, the Court **IMPOSES** sanctions of $380,000 for past offenses, plus $20,000 per day beginning on the date on which this Order and the concurrently filed Order Finding that Defendants have Failed to Purge their Non-Compliance are electronically docketed.

## BACKGROUND

The Court summarized the factual and procedural background of this case in ruling on the FTC's Motion to Modify the Final Order and on Villwock's various motions, the order on which is filed concurrently with this order. The Court hereby incorporates by reference the background as set forth therein. (*See* Order 2–6, ECF No. 414.)

## LEGAL STANDARD

District Courts have wide latitude and a broad range of civil contempt sanctions at their disposal, including "fine[s], imprisonment, receivership, and a broader category of creative, non-traditional sanctions." *United State v. Tennessee*, 925 F. Supp 1292, 1303 (W.D. Tenn. 1995); *see also Hook v. Arizona*, 907 F. Supp. 1326, 1339 (D. Az. 1995). "The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." *SEC v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980); *see also SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir, 2003) (authorizing asset freeze of third party to effectuate relief). Sanctions may be imposed to coerce defendants into compliance with a court order, to compensate the party pursuing the contempt action for any resultant losses, or both. *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947); *United States v. Bright*, 596 F.3d 683, 696–97 (9th Cir. 2010).

With regard to coercive sanctions, "[g]enerally, the minimum sanction necessary to obtain compliance is to be imposed." *Whittaker Corp v. Execuair Corp.*, 953 F.2d

510, 517 (9th Cir. 1992) (citing *Spallone v. United States*, 493 U.S. 265, 280 (1990)). In determining the amount and duration of a coercive fine, the Court considers "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United Mine Workers*, 330 U.S. at 304; *see also Whittaker Corp.*, 953 F.2d at 516.

With regard to compensatory sanctions in the context of civil contempt, it is clear under the FTC Act, 15 U.S.C. §§ 41–58, that the Court has broad authority to "grant ancillary relief as necessary to accomplish complete justice, including the power to order restitution." *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) (internal quotation marks omitted) (quoting *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994)). Specifically, the Ninth Circuit has stated that "because the FTC Act is designed to protect consumers from economic injuries, courts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits." *Id*.

## ANALYSIS

### I. FTC's Proposed Sanctions

The FTC urges the Court to impose the full daily sanctions of up to $15,000 per day set forth in the Court's July 11, 2012 Order for the period from August 10, 2012 to February 9, 2014–the end of the thirty-day grace period granted by the Court's January 10, 2014 Order. (Plaintiff's Brief 2, ECF No. 337.) The FTC contends that Contempt Defendants have not made good-faith efforts to comply with the Final Order, but rather have engaged in "multiple attempts to deceive or mislead the Court regarding their compliance efforts." (*Id*. at 5.) Contempt Defendants have known "*exactly* what action they need to take" for this entire period of time, but have failed to do so. (*Id*. at 2–3 (emphasis in original).) The FTC believes that the Court should not excuse sanctions for Contempt Defendants' noncompliance up to the January 10, 2014 deadline, because "Contempt Defendants were fully aware of the sanction they faced." (*Id*. at 6–7.)

The FTC additionally urges the Court to either jail Contempt Defendants or increase the sanction to $25,000 per day for any noncompliance after February 9, 2014, because "Contempt Defendants . . . demonstrated over the [course of] 18 months that a sanction of up to $15,000 per day simply is not effective." (*Id*. at 8–9.)

**II. Contempt Defendants' Proposed Sanctions**

Contempt Defendants urge that they have made "extensive, good-faith and successful efforts" to address the Court's prior Orders, and therefore the Court should impose no sanctions at all. (Defendants' Brief 2–3, ECF No. 338.) Contempt Defendants claim to have done "all they could do within their power to comply with the Courts' Orders," and suggest that "there is no proof of willful [noncompliance]." (*Id*. at 5.) Because Contempt Defendants have purportedly already altered their behavior, additional sanctions are unwarranted. (Defendants' Reply Brief 7, ECF No. 339.)

If the Court does decide to impose sanctions, Contempt Defendants ask that the Court keep in mind that "the FTC, notwithstanding all its evidence, could not identify one fraudulent check created by a user of VersaCheck X1 software." (Defendants' Brief 3, ECF No. 338.) Further, because Contempt Defendants "were [not] appraised [*sic*] of the Court's opinion their compliance efforts after the July 11, 2012 Contempt Order were deficient" "until issuance of the Court's January 10, 2014 Order," the Court should not impose sanctions for that period of time. (*Id*. at 4.) A large sanction would also "reduce (or eliminate) [Contempt] Defendants' remaining resources, wiping out their ability to comply entirely." (*Id*. at 5.) Accordingly, Contempt Defendants urge a "*de minimis* sanction." (*Id*. at 4.) Contempt Defendants argue that the FTC's proposal of an increased sanction is unwarranted given their compliance efforts and their lack of resources. (Defendants' Reply Brief 6–7, ECF No. 339.)

More recently, Villwock has asserted that it is, and always has been, impossible for him and other Contempt Defendants to comply with the Court's Final Order. (Villwock's Counter Motion to Vacate the Final Order and Any Previous Findings of

Contempt 13, ECF No. 393-1.) Villwock states further that "Defendants are not aware of any coercive method, such as daily sanctions, temporary or permanent imprisonment, or even death, to coerce Defendants into compliance the Final Order."

## III. The Court's Proposed Sanctions

### *A. Past Sanctions (For the Period Prior to the January 10, 2014 Order)*

In light of the circumstances of this case, the Court agrees with Contempt Defendants that it would generally be inequitable to impose sanctions for the period prior to the January 10, 2014 Order. This is, however, subject to several caveats:

- *First*, in the July 11, 2012 Contempt Order, the Court imposed a $100,000 fine "to attempt restitution for consumer losses suffered as a result of Contempt Defendants' utter disregard of th[e] core and relatively non-burdensome provision of the Final Order" concerning contract information disclosures. (Order 20, ECF No. 272.)
- *Second*, the Court finds it appropriate to impose the original sanctions of $10,000 per day for the period of August 10 to September 6, 2012, when Contempt Defendants had implemented neither account control nor identity verification procedures. This amounts to $280,000, which seems appropriate for this shortcoming.

Accordingly, for past offenses, the Court imposes sanctions in the amount of $380,000.

### *B. Future Sanctions (For the Period Beginning on the Date this Order is Electronically Docketed)*

Any further sanctions should be calculated starting on the date this Order and the concurrently filed Order Finding that Defendants have Failed to Purge their Non-Compliance are electronically docketed. While Contempt Defendants' noncompliance never seems to have ceased, the case has effectively been stalled since Jones Day and James C. Stevens withdrew as Contempt Defendants' counsel. Therefore, the Court finds it appropriate to not impose sanctions during this interim period and, instead, impose sanctions beginning on the date this Order is filed.

Contempt Defendants argue that they have made good faith efforts to comply with the Court's prior Orders. However, for the reasons identified in the January 10, 2014 Order and the conclusions in the concurrently filed Order finding that Contempt Defendants have still failed to purge their contempt, this is clearly not the case. Moreover, Villwock has effectively admitted that he is no longer even attempting to comply with this Court's Orders.

Contempt Defendants have repeatedly attempted to pass the buck onto others (for example, Villwock's daughter and brother) and capitalize off of their contempt. Most reprehensibly, Contempt Defendants continue to refuse to take ownership of their past misconduct, and mischaracterize this Court's Orders as either "new FTC regulations" or rulings aimed at the industry as a whole rather than Contempt Defendants specifically. Contempt Defendants have even tried to guilt users of their product into buying newer versions of the software so that the users are purportedly in compliance with new regulations.

All in all, Contempt Defendants have failed to take actions within the spirit of the Final Order to ensure the safety of the general public. Contempt Defendants have yet to take any action aimed at taking older versions of the VersaCheck software out of circulation, and instead of hiring independent third parties to verify users' identities and account information, Contempt Defendants decided to engage in a shell game whereby Contempt Defendants "got out of the business" of check creation software, transferring the "independent" verifiers to the payroll of Villwock's brother and daughter, who are, or were, the purported retailers of VersaCheck. More recently, it seems as though Contempt Defendants have all together ceased utilizing any sort of identity verification procedures.

Accordingly, the Court agrees with the FTC that daily sanctions of $15,000 are apparently insufficient to motivate Contempt Defendants to comply with this Court's Orders.

Given that Villwock has stated that no amount of sanctions can force his

compliance with the Court's Orders, it is difficult to calculate an appropriate monetary sanction for Contempt Defendants' continuing noncompliance. As the Court explained in its July 11, 2012 Order,

> The extent of Contempt Defendants' noncompliance with the Final Order and the amount of harm caused by their refusal to implement the Final Order's required verifications are difficult to quantify. . . .
>
> Notwithstanding the clear existence of harm caused by Contempt Defendants' actions, based on the evidence currently before it the Court cannot make an exact or even approximate determination of the consumer harm caused by Contempt Defendants' products and ongoing violations. Instead, the Court has attempted to take into account Contempt Defendants' complete disregard for the Court's Final Order, coupled with their troubling attempts to mislead the Court and cover up their web of deceit, in calculating the appropriate coercive sanctions to award here.

(Order 19, ECF No. 272 (footnote omitted).) There remains a dearth of evidence enabling the Court to fashion a sanction approximating consumer harm. Accordingly, the Court must instead weigh what it does know in attempting to fashion a suitable sanction.

The Court concludes that the daily sanction should be increased to <u>$20,000 per day</u>. Notwithstanding Villwock's claim to the contrary, this is, hopefully, a sufficient increase to motivate Contempt Defendants to finally comply with this Court's Orders, but it is not so large a sanction as to be punitive or unreasonable.

**CONCLUSION**

In light of the foregoing, the Court **IMPOSES** the following sanctions:

- <u>$380,000</u> for past offenses; and
- <u>$20,000 per day</u> beginning on the date this Order and the concurrently filed Order Finding that Defendants have Failed to Purge their Non-Compliance are electronically docketed.

DATED: September 9, 2015

Janis L. Sammartino
Honorable Janis L. Sammartino
United States District Judge